# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 27, 2013

## STATE OF TENNESSEE v. TELLY LAMONT BOOKER

**Appeal from the Criminal Court for Knox County**
**No. 88057      Bob R. McGee, Judge**

**No. E2011-01915-CCA-R3-CD - Filed April 3, 2013**

The defendant, Telly Lamont Booker, appeals from his Knox County Criminal Court jury convictions of possession with intent to sell or deliver .5 grams or more of cocaine in a school zone, evading arrest, and unlawful possession of a weapon. In this appeal, he contends that the trial court erred by admitting evidence of his previous convictions, by permitting a police officer to testify as an expert witness on the habits of individuals involved in the illegal drug trade, and by refusing to provide a requested jury instruction. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk (on appeal); and Gregory H. Harrison (at trial), Knoxville, Tennessee, for the appellant, Telly Lamont Booker.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Jennifer Welch and Sean McDermott, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to events that transpired on March 17, 2007, in Knoxville. At trial, Knoxville Police Department ("KPD") Officer Eric Heitz testified that at approximately 3:30 a.m. on March 17, 2007, he responded to a call of "shots fired in the area around Holston Drive, Holston Court" involving a white Ford Expedition. As Officer Heitz arrived at the intersection of Holston Drive and Holston Court, he observed "a white

Ford Expedition back in against the laundry facility." When Officer Heitz pulled his cruiser into the laundry facility parking lot, the driver jumped from the still-moving vehicle and fled on foot. Officer Heitz gave chase.

After a brief foot chase, the suspect ducked into a wooded area, and Officer Heitz decided not to follow, fearing a "tactical disadvantage." When he saw the screen of the suspect's cellular telephone illuminate, however, Officer Heitz entered the wooded area and found "an individual l[]ying on the ground, trying to hide." Officer Heitz ordered the suspect to his feet and patted him down for weapons before leading him from the wooded area. At that point, the man identified himself as the defendant.

After placing the defendant in custody, Officer Heitz retraced the chase route looking for items "that may have been tossed by the suspect." He found a handgun lying on the ground in the same location where the defendant had been hiding.

Following his arrest, the defendant was taken to the police station, where Officer Heitz conducted a more thorough search of his person. During that search, Officer Heitz discovered "three large pieces of crack cocaine and . . . three smaller pieces . . . in small plastic baggies" in the defendant's right front pants pocket. Officer Heitz said that the amount of cocaine was atypical for a casual drug user, explaining, "[U]sers will only get a small rock, and they may have one or two of them, and they don't keep 'em for very long. They go wherever they get 'em, if they don't smoke 'em there they're going to go someplace else quickly and use them up."

KPD Officer Scott Noe also responded to the "shots fired" call and arrived at the intersection in time to see "the occupant of the vehicle jump[] out of the vehicle and [leave] it rolling into" Officer Heitz's patrol car. As Officer Heitz gave chase, Officer Noe "drove down Holston Drive and then back around Ash[e]ville Highway in an effort to cut them off." Eventually, Officer Noe assisted Officer Heitz in apprehending the defendant in the wooded area. Officer Noe placed the defendant into his patrol car and returned with him to the scene of his escape from the vehicle. Officer Noe searched the vehicle and discovered a bag containing two smaller bags, one that contained two larger rocks of crack cocaine and one that contained six smaller rocks. He said that he had "never ever, ever, seen anyone have this much crack cocaine for personal use." He observed that the crack cocaine discovered in the vehicle was packaged "identically" to the cocaine discovered in the defendant's possession. Officer Noe testified that he found "[n]o crack pipes, no glass tubes, no metal tubes, no crooked Coke cans, no . . . crack use at all or paraphernalia" inside the vehicle. He said that he likewise found no cigarettes, cigars, or wrappers inside the vehicle.

Officer Noe testified that after being provided *Miranda* warnings, the

defendant admitted that "he took an X pill, which . . . refers to ecstacy." Officer Noe explained that ecstacy was a "club" drug and that crack users did not typically consume drugs other than crack if it was available. The defendant eventually became nauseated from ingesting the ecstacy. The defendant also admitted possessing the handgun, telling Officer Noe that he removed it from the vehicle and put it into his pants pocket before fleeing the scene.

Officer Noe transported the defendant to the police station, where he was searched by Officer Heitz and interviewed by Investigator Jim Claiborne. Officer Noe, who was present during the interview, recalled that the defendant admitted selling crack cocaine and having "between seven and eight grams" on his person. The defendant told officers "that he would lay around and not work during the day time. He would sleep. And he would – at nighttime he had free time." The defendant claimed that during his "free time," other individuals provided him with crack cocaine at no charge that he would then "use . . . to have a hotel room with some working girls, kind of a bartering system, pay them off, supply them with crack, and that he would obtain food for that. And he would use crack as a bartering system as money." The defendant also told officers that he "ping pinged" crack, which Officer Noe explained meant that he would "take a small amount of crack and . . . sprinkle it on a marijuana cigarette and smoke it that way."

During cross-examination, Officer Noe acknowledged that the defendant did not admit selling drugs on that particular evening, only that he had sold drugs in the past and that he intended to use the drugs in his possession that day for bartering. He said that the defendant told officers that the crack was given to him because "people owe him favors" and denied that the crack was "fronted" to him for sale.

KPD Sergeant Joshua Shaffer testified as an expert "in the field of investigations in drug-related crimes" that he had never encountered a crack cocaine user who possessed a large amount for their own personal use. He said he had seen some users in possession of "three or four grams," but the usual increment was .2 grams. Sergeant Shaffer explained that "[a] normal street-level dealer will normally precut their drug . . . into the individual rock for sale" but that "older dealers, people who've been around in the trade a lot more, can actually eyeball it and will carry a larger piece" from which they break off smaller portions. Sergeant Shaffer said that a crack user carrying 14 grams of crack cocaine "would be the equivalent of a beer drinker having 70 beers in their pocket" and that the approximate street value of 14 grams of crack cocaine was $1,400. He added that drug dealers are more likely than drug users to go armed.

Tennessee Bureau of Investigation Agent and Forensic Scientist Clayton Hall testified that forensic testing established that the substance found on defendant's person was

cocaine base. He said that he tested a 1.32-gram sample of the substance and did not test the remaining 3.23 grams of rock-like substance. He said that given its packaging and appearance, the 3.23 grams was also cocaine base. Agent Hall also tested 1.96 grams of the rock-like substance found in the vehicle, and it was cocaine base. The remaining 4.13 grams also appeared to be cocaine base.

Melanie Stipes, an employee of Freedom Christian Academy, testified that it was "a private Christian school" located on the grounds of Chilhowee Hills Baptist Church "that serves children from infants through eighth grade." Knoxville Geographic Information Systems ("KGIS") Analyst and Cartographer Garrett McKinney testified that he utilized the KGIS database to create a map showing the parcel boundary of Freedom Christian Academy along with a 1,000 foot buffer. He said that the distance from the school's parcel boundary to the wooded area where the defendant was apprehended was 384 feet.

Following this testimony, the State rested. The defendant presented no proof, and the trial court submitted counts one and two to the jury for a determination of guilt. The trial court accepted the defendant's pleas of guilty to counts three through five and submitted those counts to the jury only for a determination of the appropriate fine. The jury found the defendant guilty as charged in counts one and two and imposed fines of $50,000 in each count. The jury imposed no fine for the remaining counts. The trial court later merged the jury verdict in count two into that from count one and imposed a total effective sentence of 28 years, with a minimum of 25 years to be served in confinement by operation of law.

The defendant filed a timely but unsuccessful motion for new trial and a timely notice of appeal. In this appeal, he contends that the trial court erred by permitting the State to present evidence of his prior convictions after he entered open pleas of guilty to those offenses requiring proof of prior convictions, that the trial court erred by permitting Sergeant Shaffer to testify as an expert witness about the habits of individuals involved in the illegal drug trade, and that the trial court erred by refusing to provide a jury instruction on possession of cocaine with intent to sell or deliver outside a school zone as a lesser included offense of possession of cocaine with intent to sell or deliver within 1,000 feet of a school. We consider each claim in turn.

*I. Prior Convictions*

The defendant claims that the trial court should not have permitted the State to offer evidence of his prior convictions, including reading into the record a stipulation of those convictions, after he entered open pleas of guilty to the charges of possession of a firearm after having been convicted of a violent felony and possession of a firearm after having been convicted of a drug-related felony. The State contends that it was entitled to

-4-

present evidence of the defendant's prior convictions in proving its case.

We need not tarry long over the defendant's claim because the record establishes that the State did not present evidence of the defendant's prior convictions to the jury. Prior to trial, the defendant informed the trial court that he intended to plead guilty to the firearms offenses and asked the court to sever those offenses from the drug possession charges. The trial court refused to sever the offenses. After the jury was empaneled, the State read the presentment to the jury, and the defendant entered pleas of not guilty to the drug possession charges and guilty to the charges of evading arrest and firearms possession.[1] Although the defendant claims on appeal that a stipulation between the parties concerning the defendant's prior convictions was read to the jury following the reading of the presentment, the record does not support his assertion. In addition, although certified copies of the defendant's convictions were entered as exhibits, the admission took place outside the presence of the jury, and the exhibits were specifically marked "Do Not Pass to Jury." No other mention was made of the defendant's prior convictions, and no proof of those convictions was admitted. Finally, although the trial court submitted counts three through five to the jury, it did not do so for a determination of guilt but only for the setting of a fine. The jury declined to impose a fine for those offenses. Although we agree with the State that a better procedure could have been followed for the acceptance of the defendant's guilty pleas in this case, we cannot say that the procedure inured to his prejudice. Because the record establishes that the State did not admit any evidence of the defendant's prior convictions, he is not entitled to relief on this issue.

## II. Expert Testimony

The defendant asserts that the trial court erred by permitting Sergeant Shaffer to testify as an expert witness on the habits of those involved in the illegal drug trade. The State submits that the trial court committed no error.

Sergeant Shaffer testified that he had been working as a full-time police officer with the KPD for 11 years at the time of trial and that he spent five years in KPD's "Explorer Program" as a teenager before becoming a police cadet in 1998. He stated that he was class president and valedictorian of his recruit class and had recently been promoted to the rank of Sergeant. Sergeant Shaffer said that he spent the early part of his career working "predominantly in East Knoxville" as part of a "community response team" that investigated

---

[1]This part of the trial was not transcribed and made a part of the record on appeal, but the parties agree that the defendant pleaded guilty to counts three through five following the reading of the presentment. Moreover, the minute entry for the first day of trial indicates that the defendant entered pleas of guilty to those counts and that the trial court found him guilty of the offenses.

"street-level" drug crimes. In 2007, he joined the "repeat offender squad," which worked "hand in hand" with the organized crime unit to investigate drug trafficking from the street level to major conspiracies. During his time on the repeat offender squad, Sergeant Shaffer dealt with drug crimes on a daily basis.

Sergeant Shaffer testified that in addition to his day-to-day experience, he had received extensive training in drug identification, drug crime investigation, and gang identification and investigation. He had also been called upon to teach courses in drug investigation.

Based upon this testimony, the trial court recognized Sergeant Shaffer as an expert "in the field of investigations in drug-related crimes."

The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. *See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2010); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

The defendant contends that Sergeant Shaffer's knowledge and experience "is interesting" but that the trial court nevertheless erred by "treating the habits of drug dealers and users as an area of specialized expertise." We disagree. This court has previously held that when the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify about matters relating to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence. *See State v. Bruce Elliot*, No. M2008-02686-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Apr. 9, 2010); *see also, e.g., State v. Gayle Thomas Crawford*, No. W2009-00263-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, Oct. 7, 2009); *State v. Daniel Potin*, W2005-01100-CCA-R3-CD, slip op. at 5-6 (Tenn. Crim. App., Jackson, June 7, 2006), *perm. app. denied* (Tenn. Nov. 13, 2006); *State*

*v. Samuel L. Giddens*, No. M2002-00163-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Nashville, Nov. 15, 2004); *State v. Timothy Murrell*, No. W2001-02279-CCA-R3-CD, slip op. at 7-9 (Tenn. Crim. App., Jackson, July 2, 2003). Here, the State established that Sergeant Shaffer possessed the requisite training and experience to provide expert testimony on narcotics trafficking.

Moreover, to obtain a conviction in this case, the State was required to prove that the defendant possessed the crack cocaine for sale or delivery, an issue addressed directly by Sergeant Shaffer's testimony. *See* Tenn. R. Evid. 401. Sergeant Shaffer's testimony regarding the illicit drug trade informed the jury's determination whether the defendant possessed the crack cocaine for sale or delivery. In consequence, the trial court did not abuse its discretion by admitting the testimony.

Finally, we note that although the defendant objected to Sergeant Shaffer's testimony regarding the habits of illegal drug users and dealers and although he challenges this testimony again on appeal, the record establishes that virtually the same testimony was offered by Officers Heitz and Noe without objection from the defendant. Under these circumstances, the defendant is not entitled to relief on this issue.

### III. Jury Instructions

In his final issue, the defendant claims that the trial court erred by refusing to instruct the jury that possession of cocaine with intent to sell or deliver outside a school zone was a lesser included offense of possession of cocaine with intent to sell or deliver within 1,000 feet of a school, claiming that the "school zone element could have been rejected by the jury" as "a compromise verdict." The State contends that the defendant waived the issue by failing to request the instruction in writing, and, in the alternative, that the trial court did not err by rejecting the instruction.

Citing Tennessee Code Annotated section 40-18-110, the State asserts that the defendant has waived our consideration of the instruction issue by failing to request the instruction in writing. At the time of the defendant's trial, instructions on lesser included offenses were governed by the provisions of Tennessee Code Annotated section 40-18-110, which provided, in pertinent part, as follows:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

T.C.A. § 40-18-110(b)-(c) (2012). The terms of the statute, which has been deemed constitutional by our supreme court, *see State v. Page*, 184 S.W.3d 223, 230 (Tenn. 2006), unambiguously state that an issue regarding the failure to instruct on a lesser included offense may not be presented on appeal unless the lesser included offense instruction was requested in writing prior to the trial, *see id.* (holding that Code section 40-18-110 "subjects the right to lesser-included offense instructions to the general rule that issues concerning incomplete instructions are deemed waived in the absence of an objection or special request"). In this case, the defendant made no written request. Our supreme court recognized, however, that, despite the defendant's failure to request a jury instruction on a lesser included offense, the appellate court could consider the issue via plain error analysis. *See id.* ("Although section 40-18-110(c) precludes a defendant from raising the trial court's failure to instruct on lesser-included offense instructions not requested in writing, appellate courts are not precluded from *sua sponte* reviewing this issue under the plain error doctrine.").

Because the defendant did not comply with Code section 40-18-110, we are precluded from considering the issue unless it warrants plain error treatment. Plain error analysis, *see* Tenn. R. App. P. 13(b) (stating that an appellate court may, in its discretion, consider issues not raised by the parties), 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."), encompasses consideration of the following factors:

"(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is 'necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established before this court will recognize an error as plain. *Id.* at 283. "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Page*, 184 S.W.3d at 231.

We cannot say that the trial court's refusal to provide an instruction on possession with intent to sell or deliver cocaine outside of a school zone rises to the level of plain error. The record establishes that the defendant requested the instruction to coincide with his argument to the jury that the defendant was less culpable because Freedom Christian Academy was not in session at the time of the defendant's arrest and was not visible from the street. This argument, as the trial court observed, "is a false proposition of law." Nothing in Code section 39-17-432 suggests that its provisions apply only when a school is in session or children are present. Indeed, "[t]he language of [Code section 39-17-432] unambiguously imposes enhanced criminal penalties for drug offenses occurring inside the school zone regardless of the timing of the drug offense." *State v. Smith*, 48 S.W.3d 159, 169 (Tenn. Crim. App. 2000). As we have observed, "the instruments of [drug] transactions and subsequent use, such as needles and other paraphernalia, likely to be left at the school grounds present hazards and distractions to students at all times." *State v. Jenkins*, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999).

The uncontroverted evidence established that the defendant possessed a large amount of crack cocaine 384 feet from Freedom Christian Academy and that he did so with the intent to sell or deliver it. That his possession and proximity to the school occurred at a time when the school was closed and students were not present was irrelevant. Consequently, the trial court committed no error by refusing the defendant's requested instruction.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE